**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO.  4:17-CR-78(6) |
| | § | |
| CHRISTOPHER JOEL TODD | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Christopher Joel Todd's ("Todd") Motion to Reduce Term of Imprisonment Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to Coronavirus (#294), wherein Todd seeks an order reducing his term of imprisonment to time served and converting the remainder of his remaining unserved term of imprisonment to supervised release or probation due to COVID-19.  The Government filed a Response (#296) in opposition and maintains that Todd has not exhausted his administrative remedies.  United States Probation and Pretrial Services ("Probation") also recommends that the court deny his motion.  Having considered the pending motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.     Background

On August 22, 2017, Todd pleaded guilty to Count One of the First Superseding Indictment, Conspiracy to Possess with Intent to Manufacture and Distribute at Least 50 Grams but Less Than 500 Grams of a Mixture or Substance Containing a Detectable Amount of Methamphetamine or at Least 5 Grams but Less Than 50 Grams of Methamphetamine (Actual), in violation of 21 U.S.C. § 846.  He admitted to supplying co-conspirators with at least 350 grams but less than 500 grams of a mixture or substance containing a detectable amount of methamphetamine or at least 35 grams but less than 50 grams of methamphetamine (actual).

According to the Presentence Investigation Report ("PSR"), based on laboratory reports, he was responsible for 41.54 grams of methamphetamine (actual) and 16.04 grams of marijuana. On January 19, 2018, Todd was sentenced to 70 months' imprisonment, followed by 5 years' supervised release. According to Probation's investigation, Todd is scheduled to be released to a Residential Reentry Center on October 21, 2020. In the instant motion, Todd seeks a sentence of time served due to COVID-19.

II.     Analysis

A.     Compassionate Release

On December 21, 2018, the President signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W.Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

On April 6, 2020, Todd submitted a request for compassionate release to the warden where he is housed. Probation reports that the warden denied his request. Todd filed a prior Motion to

Reduce Term of Imprisonment due to Coronavirus on April 16, 2020, which Judge Sean D. Jordan denied for want of jurisdiction on May 7, 2020.  Todd filed the instant motion on the same grounds on May 26, 2020.  Probation conducted a follow-up investigation with the BOP and confirmed "no status or recommendation changes have been implemented since [Todd's] last motion was filed."  Although Todd may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment to reduce his sentence to time served.

Congress did not define "extraordinary and compelling."  Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission").  *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG").  In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  The court must also consider the factors set forth in 18

U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the

policy statements issued by the Commission.  18 U.S.C § 3582(c)(1)(A).  The policy statement

regarding compassionate release requires a determination that "the defendant is not a danger to

the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

Todd, age 35, admits in his motion that he suffers from no adverse medical conditions.

His request for compassionate release potentially falls into the fourth, catch-all category of "other"

extraordinary and compelling reasons, which specifically states that the Director of the BOP shall

determine whether "there exists in the defendant's case an extraordinary and compelling reason

other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.*

§ 1B1.13 cmt. n.1(D).  Although Subdivision D is reserved to the BOP Director, the Commission

acknowledged, even before the passage of the First Step Act, that courts are in the position to

determine whether extraordinary and compelling circumstances are present.  *United States v. Beck*,

No. 1:13-CR-186-6, 2019 WL 2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the

First Step Act, it is consistent with the previous policy statement and with the Commission

guidance more generally for courts to exercise similar discretion as that previously reserved to the

BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423

F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Todd for any reason.   Moreover, in exercising its discretion, the court finds that no extraordinary and compelling reasons exist in relation to his situation.  As of June 18, 2020, the BOP reported 33 active, 1 death, and 61 recovered cases of COVID-19 among a total of 1,286 inmates and 3 active cases of COVID-19 among staff at Oklahoma City FTC where Todd is housed.  Although Todd expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Todd, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he

"does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").

Todd has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to reduce his sentence to time served and warrant his release from imprisonment. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). Todd's PSR reveals that his criminal history includes prior convictions for possession of a controlled substance (methamphetamine) (2), unlawful possession of controlled drug with intent to distribute methamphetamine, unlawful possession of drug paraphernalia, and reckless driving. He failed to comply with a previous term of probation, and he has a history of poly-substance abuse. Under the circumstances, the court cannot conclude that he would not pose a danger to any other person or to the community, if released.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. To date, the BOP has placed 4,360 inmates on home confinement. The March 2020 directive is limited to "eligible at-risk inmates who are

non-violent and pose minimal likelihood of recidivism and who might be safer serving their

sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR

2:13-852-1, 2020 WL 3000799, at \*3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive

authority to determine where a prisoner is housed; thus, the court is without authority to order

home confinement.  18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at \*3; *see United States*

*v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at \*1 (N.D. Tex. May 15, 2020)

("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to

home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr

acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP

personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public,

meaning that "we cannot take any risk of transferring inmates to home confinement that will

contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney

General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes

that police officers protecting the public face an increased risk from COVID-19 and cannot avoid

exposure to the virus, with their numbers dwindling as officers who contract the virus become ill

or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the
> indiscriminate release of thousands of prisoners onto the streets without any
> verification that those prisoners will follow the laws when they are released, that
> they have a safe place to go where they will not be mingling with their old criminal
> associates, and that they will not return to their old ways as soon as they walk
> through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will

behave if he were to be released is how he behaved in the past, and his track record is a poor

one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020)).  Here, Todd's track record is similarly a poor one.

In short, Defendant has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances").  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id*.

III.    Conclusion

Consistent with the foregoing analysis, Todd's motion (#294) is DENIED.

 SIGNED at Beaumont, Texas, this 19th day of June, 2020.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE